UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60612-RUIZ/STRAUSS

KAMONTE MCNEIL,

      Plaintiff,

v.

MARK S. INCH,
*Secretary, Florida Department of Corrections*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [DE 1], filed by Petitioner, Kamonte McNeil, on March 23, 2020.  This case has been referred to me, pursuant to 28 U.S.C. § 636(b) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Petition [*see* DE 10].  I have reviewed the Petition, the Response [DE 6] and Reply [DE 9] thereto, and the record in this case [DE 7, DE 8].[1]  For the reasons discussed herein, I respectfully **RECOMMEND** that the Petition [DE 1] be **DENIED**.

## I. GROUNDS RAISED IN PETITION (INEFFECTIVE ASSISTANCE OF COUNSEL)[2]

    1.      Counsel Failed to Develop and Present a Viable Defense.

---

[1] Citations to "R. [page]" refer to the record/appendix [DE 7-1].  Citations to "TT. [page]" refer to the trial transcript [DE 8-1].  References to page numbers from the trial transcript are to the page numbers reflected on the transcript itself (not the ECF-stamped page numbers, which are different by one page).  Citations to "ST. [page]" refer to the transcript from Petitioner's sentencing hearing [DE 8-2].  Citations to "HT. [page]" refer to the transcript from the evidentiary hearing on Petitioner's state-court 3.850 motion [DE 8-3].

[2] Grounds 1-3 and 6 pertain to the alleged ineffective assistance of trial counsel.  Grounds 4 and 5 pertain to the alleged ineffective assistance of appellate counsel.

2.      Counsel Misadvised Petitioner Regarding the Right to Testify on His Own Behalf.

3.      Counsel Misadvised Petitioner During Plea Negotiations.

4.      Counsel Failed to Argue on Direct Appeal that the Judge Improperly Considered Petitioner's Lack of Remorse at Sentencing.

5.      Counsel Failed to Argue on Direct Appeal that the Prosecutor Impermissibly Commented on Petitioner's Right to Remain Silent During Closing Argument.

6.      Counsel Failed to Call a Favorable Witness.

## II. <u>BACKGROUND</u>

### A.  PROCEDURAL HISTORY

Petitioner was a massage therapist at Massage Envy who was accused of forcibly inserting his fingers into a client's vagina without her consent during an appointment on June 9, 2010.  TT. 214-20.  Consequently, on July 8, 2014, Petitioner was convicted on charges of battery and sexual battery.  R. 13-16.  On August 28, 2014, he was sentenced to ten years in prison followed by three years of probation.  R. 17-29.  Petitioner then filed an appeal on September 18, 2014.  R. 34.  On April 28, 2016, the state appellate court issued a *per curiam* affirmance.  R. 83.  The mandate followed on May 27, 2016.  R. 85.  Petitioner subsequently filed (on June 14, 2017) a Petition for Writ of Habeas Corpus with the state appellate court, alleging ineffective assistance of appellate counsel.  R. 90-119.  Therein, Petitioner raised various arguments including the fourth and fifth grounds he raises in his Petition in this case.  *See id.*  The state appellate court denied Petitioner's petition on December 26, 2017.  R. 142.  Petitioner filed a Motion for Rehearing and Rehearing En Banc, R. 144-46, which was denied on February 22, 2018.  R. 148.

In addition to seeking relief from the state appellate court, Petitioner also filed (with the state trial court), on January 17, 2017, a Motion for Postconviction Relief pursuant to Rule 3.850

of the Florida Rules of Criminal Procedure.  R. 150-86.  Therein, Petitioner raised arguments that were the same or similar to those that he raises in grounds 1-3 and 6 of the Petition in this case. *See id.*  After holding an evidentiary hearing, the state trial court denied Petitioner's motion in a detailed written order, dated December 3, 2018.  R. 188-203.  Petitioner appealed that order, R. 208, with the state appellate court issuing a *per curiam* affirmance on August 8, 2019.  R. 270. The mandate followed on September 13, 2019.  R. 272.

### B.  FACTUAL BACKGROUND

#### 1.  Victim's Testimony[3]

On June 9, 2010, the victim had a massage appointment with Petitioner (for what was her approximately eighth massage with Petitioner).  TT. 214.  The victim testified that during the appointment, Petitioner was massaging her thighs and then "just started to put his finger into my vagina and just started going in and out."  TT. 218.  He did so "forcibl[y] and aggressive[ly] with more than one finger.  TT. 219.  The victim was "frozen," "numb," and "shocked."  TT. 220.  She said that she was "not sure what was happening.  This is very unexpected."  TT. 220.  The victim also testified that she never gave Petitioner her permission.  TT. 220.  However, she testified that she did not immediately leave the room because she was scared and frozen and did not want Petitioner, who was strong (with a martial arts background), to hurt her.  TT. 221-22.  Additionally, the victim stated that she was squirming and uncomfortable, that it was near the end of the massage, that Petitioner tried to calm her down, started kissing her forehead (after she turned over), and said he dreams about her and wanted to do this for some time.  TT. 221-23.

According to the victim, Petitioner then started massaging her stomach.  TT. 223. However, he proceeded to remove the entire sheet that was covering the victim (something he

---

[3] In addition to the victim, a police officer and detective testified at trial.

never did before), leaving her fully exposed, and he then started massaging her breasts with both hands (again, without permission).  TT. 223-24.  At that point, the victim said enough, that she needed to think about what happened, and that she needed to go.  TT. 223-24.  During that conversation, Petitioner said he wanted to take the victim out on a date.  TT. 223-24.

The massage then ended, and Petitioner left the room.  TT. 224.  The victim then put her clothes on and left.  TT. 225.  On the way out, the women at the front asked her if she was okay, to which she responded no and that she had to go.  TT. 225.  Once outside, the victim started crying and shaking and called her friend.  TT. 225-26.  She then went into a nail place next door and spoke to her friend while receiving a pedicure.  TT. 228.  Following the conversation with her friend, the victim returned to Massage Envy to request that her membership be cancelled and that her information be removed from the system.  TT. 228.  After leaving, the victim called the police from the parking lot.  TT. 229-30.  The police told her to return home and that an officer would be sent to her house.  TT. 230.  The victim spoke with an officer later that day and subsequently provided a statement to a detective.  TT. 230, 234.

### 2.  Petitioner's Version of Events

Petitioner did not testify at trial (based on the advice of counsel).  However, he testified at the state court evidentiary hearing on his Rule 3.850 motion.  In the Petition, Petitioner summarizes his version of events as follows:

> As per Massage Envy's procedure, Petitioner used appropriate draping techniques to ensure coverage of the victim's private areas. The procedure required Petitioner to wrap the victim's midsection with a sheet as one would do with a baby's diaper, hence the name "diaper wrap." This not only restricted access to the victim's private areas, but also gave her full control of the sheet to tighten it if she were to become uncomfortable at any point during the massage. While administering the massage, the victim began to "moan and gyrate her hips." This prompted Petitioner to inquire whether he was applying too much pressure, to which the victim indicated she was okay. When it was time for the victim to turn over onto her back, she purposefully exposed her breasts. Petitioner attempted to cover the victim with a sheet, at which

point the victim sat up, grabbed Petitioner's hand, and thrust it into her pubic area while simultaneously grabbing his penis. Petitioner backed up and explained that he did not "mess around with clients." The victim looked confused and upset that Petitioner had rejected her advances. Petitioner again attempted to cover the victim, but she did not want a sheet over her. He continued the massage without any other incidents of sexual contact. When the massage ended, the victim indicated that she had scheduled another massage for the following Sunday.

Petition at p. 18.[4]  Petitioner states that he never had sexual contact with the victim and that he informed his attorney of his version of events.  *Id.* at p. 19.

### 3.  Trial Counsel's Testimony at State Court Evidentiary Hearing

Petitioner's trial counsel, Donald Cannarozzi, testified that he discussed Petitioner's version of events with him.  HT. 77.  Initially, Petitioner provided a version similar to what was in his Rule 3.850 motion (the version of events he also provides here).  HT. 78-79.  That version was that the victim became sexually aroused, came on to Petitioner, and also exposed her breasts, while Petitioner did nothing, was "totally professional," and "would not engage her at all."  HT. 79-80. Trial counsel testified he did not believe a jury would buy that version.  HT. 80.  Instead, he thought Petitioner's defense would be stronger if he argued that the victim misinterpreted what occurred for several reasons including that the victim testified during her deposition that she did not know what was happening at first.  HT. 81-82.  Counsel said he spoke to several females who stated they would know immediately if a masseuse put his finger in their vagina and that they would not misinterpret such an action.  *Id.*  Counsel discussed the foregoing and trial strategy (in a general sense) with Petitioner.  HT. 82.  However, he could not remember the level of depth in which he discussed strategy with Petitioner, and he acknowledged that they did not discuss certain events in detail given that Petitioner decided to accept a plea at their next meeting.  HT. 102.

---

[4] References to page numbers from the Petition are to the ECF-stamped page numbers, not the page numbers reflected elsewhere on the pages of the Petition (which are different by one page).

At that second meeting, counsel planned to discuss specific questions for trial with Petitioner but said "the train went off the rails." HT. 83. During the meeting, Petitioner said, "you're my attorney, I can tell you anything." *Id.* Counsel said absolutely, and Petitioner looked at counsel in the eyes and said, "I did it." HT. 84. Petitioner added, but she wanted it. *Id.* Counsel then said consent may be a viable defense, but he noted a *Williams* Rule issue[5] (for a consent defense, not a denial) that would allow for the introduction of other unfavorable evidence. HT. 84-85, 103. But when counsel asked Petitioner why the victim called the police (if she wanted it), Petitioner said because he did not go far enough. HT. 85.

At that point, Petitioner said he wanted to accept a deal that had been offered. HT. 85-87. However, after initially deciding he would accept a plea offer, Petitioner subsequently decided he wanted to go to trial instead. HT. 87-88. When counsel was asked if Petitioner provided an explanation for why he decided to go to trial, counsel said Petitioner would quote bible verses. HT. 88. When asked if Petitioner liked the deal but said he did not want to admit guilt, counsel testified, "No. No. It was always going to trial." HT. 91. Counsel begged Petitioner to accept the deal, saying Petitioner would hurt himself, but Petitioner would not listen. *Id.*

Now, realizing that the case was going to trial (after Petitioner changed his mind about the plea offer), counsel and Petitioner did not further discuss whether Petitioner would testify at trial. According to counsel, "it was sort of understood that he couldn't take the stand." HT. 92. Counsel told petitioner he could not testify "in a lawyerly advice way." *Id.* Petitioner never told counsel he wanted to testify. HT. 92-93. Instead, counsel said Petitioner "was speaking irrationally" and quoting bible. HT. 93. Counsel followed up with Petitioner stating, "so you're telling me if you're

---

[5] *See infra* note 7 (discussing the *Williams* Rule).

convicted and you get 15 years, it's God's will, and [Petitioner] said yes." *Id.* Counsel further testified as follows:

> I always told even when I'm saying you can't take the stand, I always say it's your choice because the judge questions him, too. I'm not going to say you can't take it. I'll give firm advice. I'll say you're an idiot if you take the stand but if they want to disobey -- you know go against my advice so be it.

HT. 94.  Moreover, at trial, the court engaged in the standard colloquy with Petitioner regarding whether he would testify.  *See* HT. 94-95; TT. 311-13.  During redirect examination, counsel reiterated that it was Petitioner's decision not to testify.  HT. 115.

During cross examination, counsel acknowledged he did not nail down with Petitioner how he would testify (if he testified).  HT. 104.  Instead, he assumed he knew what Petitioner would say, but counsel did not ask Petitioner what he would say.  HT. 104, 106.  Nevertheless, during direct examination, counsel testified that Petitioner's denial version would have created an ethical dilemma (as it conflicted with Petitioner's admissions to counsel), HT. 96, and during cross examination, counsel stated that if Petitioner testified consistent with what he told counsel,

> Williams Rule was going to be an issue. If he got up and said I did it, she wanted it, Williams Rules comes in. But if the State brings out, elicit[s] that the reason why she was upset was because he didn't go far enough, the impact of that on a jury would have been devastating. Any hope of winning the case would have been lost with a statement like that.

HT. 108.

### III. <u>LEGAL STANDARDS</u>

#### A.  AEDPA

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  As amended by AEDPA, title 28 U.S.C. § 2254(a) permits a federal court to issue "a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A deferential standard applies, however, to federal courts' review of petitions for habeas relief due to "the State's interest in the finality of convictions that have survived direct review within the state court system" and based upon principles of "comity and federalism."  *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) (citations omitted) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power . . . and their good faith attempts to honor constitutional rights.").

Indeed, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Relevant limitations on habeas relief are set forth in § 2254(d), which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A federal habeas court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Furthermore, a state court may adjudicate a claim "on the merits" without issuing a formal opinion or outlining its reasoning.  *Harrington*, 562 U.S. at 99.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.*  Furthermore, when a state court does not include any reasons for

the denial of a collateral attack, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The "contrary to" prong of § 2254(d)(1) means that a state court decision "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite] result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In other words, "the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Id.*

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The focus of the . . . inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* "[A] federal habeas court may not issue the writ simply because [the] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Error correction is the function of state-level appeals, whereas "[f]ederal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and internal quotation marks omitted). Thus, "[t]o satisfy [the 'unreasonable application' prong's] high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted).

An alternative avenue for habeas relief is provided in § 2254(d)(2), which applies when the state court's determination of the facts was unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "'[A] determination of a factual issue made by a State court shall be presumed to be correct,' and the prisoner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1264 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(e)(1)). *But see Burt*, 571 U.S. at 18 ("We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1).").

As with § 2254(d)(1), a federal habeas court "accord[s] the state trial court substantial deference" for claims brought under § 2254(d)(2). *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). Therefore, "the 'unreasonable determination of the facts' prong does not permit habeas relief 'merely because [the habeas court] would have reached a different conclusion in the first instance' or if 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Sec'y, Dep't of Corr.*, 800 F. App'x 776, 779-80 (11th Cir. 2020) (quoting *Brumfield*, 576 U.S. at 313-14). For a federal court to grant relief under § 2254(d)(2), just like with § 2254(d)(1), "the state court's [factual] determination must be 'objectively unreasonable.'" *Landers v. Warden, Atty. Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Objectively unreasonable means more than "merely wrong; even clear error will not suffice." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (citation and internal quotation marks omitted). Therefore, even if a state postconviction court does make a factual

error, its decision should still be affirmed if there is a sufficient factual basis to support its conclusion. *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

In sum, "AEDPA's requirements reflect a presumption that state courts know and follow the law." *Woods*, 575 U.S. at 316 (citation and internal quotation marks omitted). Therefore, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Indeed, section 2254(d)'s "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (citation omitted). "This is especially true for claims of ineffective assistance of counsel . . . in order to afford 'both the state and the defense attorney the benefit of the doubt.'" *Woods*, 575 U.S. at 316-17 (citation omitted).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

While AEDPA's substantial deference applies to all issues raised in the instant Petition, an additional layer of deference applies to a federal habeas court's review of claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen*, 563 U.S. at 190 ("Our review . . . is thus 'doubly deferential.' We take a 'highly deferential' look at counsel's performance through [§ 2254(d)'s] 'deferential lens.'") (internal citations omitted). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland*, 466 U.S. at 684-85. "[D]efendants in state court prosecutions have such right under the Fourteenth Amendment." *Minton v. Sec'y Dep't of Corrs.*, 271 F. App'x 916, 917 (11th Cir. 2008). The Constitution, however, "does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt*, 571 U.S. at 24. When assessing counsel's performance under *Strickland*, the

Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. *Id.* at 687-88. To establish deficient performance, a petitioner must show that, "in light of all the circumstances, [counsel's performance was] outside the wide range of professionally competent assistance." *Id.* at 690. *See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To establish deficient performance, a defendant must show that his counsel's representation fell 'below an objective standard of reasonableness in light of prevailing professional norms' at the time the representation took place." (citation omitted)). A court's review of performance should focus "not [on] what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. *Id.* at 1317. "Thus, no absolute duty exists to investigate particular facts or a certain line of defense." *Id.* The test for ineffectiveness is not whether counsel could have done more nor whether the best criminal defense attorneys might have done more. *Id.* at 1313 n.12. Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that *no competent counsel* would have taken the action that his counsel did take.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (quoting *Chandler*, 218 F.3d at 1315).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Under the "doubly deferential standard" applicable to ineffective assistance of counsel claims, "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012) (citation omitted). "[I]f, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and AEDPA precludes the grant of habeas relief." *Id.* (citation omitted). Ultimately, the requisite "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011).

# IV. <u>ANALYSIS</u>[6]

### A. GROUNDS I & II (Alleged Failure to Present/Develop Viable Defense & Alleged Advice Regarding Plaintiff's Right to Testify)

The Petition should be denied as to Grounds I and II.  As the state trial court recognized, these grounds are interrelated.  Thus, I too address them together.  As to Ground I, Petitioner argues that "defense counsel performed deficiently when he failed to develop and pursue a defense premised on Petitioner's version of events, which painted the victim as the aggressor."  Petition at p. 26.  That "defense was that the victim was attempting to initiate a sexual encounter, and Petitioner declined her advances" – "a flat out denial that any sexual contact occurred."  Reply ¶¶ 7-8.  According to Petitioner, the case presented a "he said/she said" dilemma, begging for an explanation from the accused.  Petition at p. 26.  Thus, like Ground II, which expressly takes issue with counsel's advice regarding whether Petitioner should have testified at trial, Ground I also turns on counsel's advice regarding whether Petitioner should have testified.  In other words, Petitioner argues that his testimony was necessary to present the viable defense that counsel allegedly failed to present (as set forth in Ground I), and Petitioner contends he would have testified to provide evidence of the defense but for the alleged bad advice of counsel.  Therefore, if counsel's performance was not deficient as to Ground II (in advising Petitioner not to testify), it could not have been deficient as to Ground I.

The state trial court found as follows (following an evidentiary hearing) with respect to the issues raised in Grounds I and II:

> The Court finds that Mr. Cannarozzi was not ineffective for failing to present a case in chief according to Defendant's version of events. Furthermore, Mr. Cannarozzi was not ineffective for advising Defendant not to testify. In addition to the

---

[6] As a preliminary matter, I find (and Respondent concedes) that the Petition is timely.  I also find (and Respondent does not contest) that Petitioner has exhausted all available state court remedies.

deference that Mr. Cannarozzi's trial strategy deserves, this Court notes that he is an experienced criminal defense attorney with thirty (30) years of experience.

Mr. Cannarozzi put on a very reasonable defense at trial. He used the police officer's testimony and the victim's own testimony to present a defense that the victim was mistaken as to what happened. Highlighting the lack of evidence or the conflict in the evidence is a well-used and viable defense. The Court will not question this defense in hindsight merely because it was unsuccessful. Moreover, Mr. Cannarozzi made a sound decision, given his experience and training, that the version of events put forth by Defendant would not convince a jury.

The Court also finds that Mr. Cannarozzi's advice not to testify was reasonable in light of the facts in this case. Mr. Cannarozzi was concerned that if Defendant testified, it would open the door to the introduction of evidence of his other case under the *Williams* Rule. The Court had previously held that if Defendant argued consent, it would open the door to *Williams* Rule evidence. Defendant presented two versions of events to Mr. Cannarozzi. In the first version of events, which is also the version he asserted in his motion and at the evidentiary hearing, the victim was the aggressor. In the second version of events, the victim consented. Either version of events implicates the issue of consent. Therefore, it was reasonable for Mr. Cannarozzi to believe that had Defendant testified to either version of events, the evidence of his other case, which would have been absolutely damaging, would have come in.

Furthermore, Mr. Cannarozzi reasonably decided that neither version of events would present well before a jury. He believed a jury was likely to respond negatively to any suggestion that the victim was the aggressor or that she called the police because she did not believe that Defendant went far enough.

Not only was Mr. Cannarozzi's trial strategy reasonable, but it also did not result in prejudice to Defendant. Had Defendant testified to either version of events, evidence of his other case would have come in. It is very likely that this evidence would be so prejudicial that the jury would be inclined to convict Defendant solely based on it.

R. 200-01.

The parties and the state trial court both discuss the *Williams* Rule[7] in connection with evaluating counsel's advice regarding whether Petitioner should have testified at trial. Concerns

---

[7] *See McDuffie v. State*, 970 So. 2d 312, 324 n.2 (Fla. 2007) ("The '*Williams* rule' takes its name from *Williams v. State*, 110 So. 2d 654 (Fla. 1959), and is codified at section 90.404(2), Florida Statutes (2005). This rule allows introduction of similar fact evidence of other crimes or acts by the defendant that are relevant to prove a material matter in the prosecution.").

about this rule were one reason that counsel advised Petitioner not to testify.  Specifically, he was concerned that evidence of another case of Petitioner involving similar alleged conduct (the *Williams* Rule evidence) would be admitted if Petitioner testified to the version of events he described to counsel (where Petitioner said he "did it," described in the state trial court's order as "the second version"), because that admission implicated issues of consent.

Petitioner addresses this issue by reiterating that his version of events is one that does not implicate consent (referred to in the state trial court's order as "the first version").  It concerns alleged victim aggression, with Petitioner doing nothing at all.  Assuming without deciding that the trial court was mistaken as to the admissibility of *Williams* Rule evidence had Petitioner testified consistent with the first version (the version presented in the Petition),[8] that does not change the fact that counsel's performance was not deficient.

Petitioner contends that defense counsel should have further discussed with Petitioner how Petitioner would testify at trial if he were to do so.  Ordinarily, that seems like something that any defense attorney should do.  However, counsel here knew, from his investigation and work on the case, and from his long-term experience as a criminal defense attorney, that it was a bad idea for Petitioner to testify, no matter which version of events he would offer.  It is clear that, from defense counsel's perspective, there were two possible outcomes if Petitioner testified.  Either Petitioner

---

[8] The victim aggressor theory that Petitioner espouses, where no "sexual contact" whatsoever occurred, does not appear to implicate consent as the state trial court found.  In fact, counsel even acknowledged this during his testimony, stating "[c]orrect" when asked, "if [Petitioner] had taken the stand and said I did not do this, it was your understanding that that would not trigger admission of *Williams* Rule evidence?"  HT. 103.  Thus, counsel's testimony completely undercuts Petitioner's argument that counsel's allegedly deficient advice was the result of counsel misapprehending the law regarding the *Williams* Rule.  On the contrary, counsel's testimony shows that counsel agreed with Petitioner that Petitioner's first version did not implicate the *Williams* Rule.  Nevertheless, as discussed below, counsel recognized that other issues rendered Petitioner's version of events in the Petition (and any testimony as to such version) problematic.

testified to the first version of events (where the victim was the aggressor and Petitioner did nothing to reciprocate), or he testified to the second version where some sexual contact occurred and the victim consented.  The second version (the version opening the door to *Williams* Rule evidence) requires little discussion – counsel's decision not to pursue a defense based on that version, and to discourage Petitioner from testifying to that version, was clearly a reasonable strategy, particularly in light of the *Williams* Rule evidence.  And, at any rate, the second version does not require further discussion here because it is the first version that Petitioner claims counsel should have presented (through Petitioner's testimony).

However, even though the first version (the version at issue here) likely would not have opened the door to *Williams* Rule evidence (as the state trial court found), counsel acted reasonably in advising Petitioner not to testify.  First, counsel did not think the jury would find Petitioner's first version to be believable.  In other words, counsel provided a reasonable "tactical explanation" for his advice and, therefore, did not act deficiently in deciding it would be a bad idea for Petitioner to testify to his first version.  *See Roberts v. State,* 307 So. 3d 808, 812 (Fla. 2d DCA 2018).  Moreover, the first version would have presented an ethical dilemma for counsel and opened a pandora's box, given that Petitioner looked counsel in the eyes and flat out told counsel that he "did it."[9]  Therefore, counsel certainly acted reasonably in advising Petitioner not to testify.  Ultimately, he knew that whichever version of events Petitioner would testify to would be plagued by its own issues and, consequently, advised Petitioner not to testify.  That advice was certainly reasonable under the circumstances.

---

[9] Petitioner's reliance on *Visger v. State*, 953 So. 2d 741 (Fla. 4th DCA 2007) is misplaced.  *Visger* is distinguishable for multiple reasons, including that the defendant there did not admit to his counsel that he did something materially contrary to the version of events he adopted.

For the foregoing reasons, the first two grounds fail to establish deficient performance (much less that the state court unreasonably applied *Strickland* to find counsel's conduct reasonable).  Moreover, they do not even address (much less establish) prejudice.  Therefore, the Petition should be denied as to Grounds I and II.

**B.  GROUND III (Alleged Advice During Plea Negotiations)**

The Petition should be denied as to Ground III.  Shortly before trial, the prosecution extended a plea offer consisting of 18 months in prison and a reduced charge of felony battery. Petitioner argues that counsel's performance was deficient because counsel did not advise him that he could accept the plea offer and plead "no contest."  *See* Petition at pp. 32-36.  According to Petitioner, he would have accepted the offer if counsel informed him that he could plead "no contest." *See id.*  However, defense counsel testified that he did not explain the difference between "guilty" and "no contest" to Petitioner because Petitioner was "dead set to go to trial."  HT. 112.

In rejecting Petitioner's similar argument, the state trial court found (following an evidentiary hearing) that Petitioner's counsel "reasonably advised [Petitioner] about the State's plea offer," and it further stated as follows:

> Defendant testified that he would have accepted the State's offer of 18 months in prison to a reduced charge of felony battery had he known he could plead no contest. It is not credible that Defendant rejected an advantageous offer merely because he believed he had to plead guilty. In any event, even if he had pleaded no contest, he would have still been adjudicated guilty. The Court finds that Defendant rejected the plea offer because he wanted to go to trial at any cost. He insisted that it was God's will that he go to trial. Mr. Cannarozzi repeatedly advised Defendant to accept the State's plea offer. Mr. Cannarozzi was not deficient for failing to discuss the possibility of a no contest plea because Defendant had definitively decided he wanted to go to trial. The Court finds that Defendant would not have accepted the State's plea offer of 18 months in prison to a reduced charge of felony battery even if Mr. Cannarozzi had advised him about the possibility of a no contest plea.

R. 202-03.

I agree with the state trial court that counsel's performance was not deficient on this issue under the circumstances – in particular, based on Petitioner's adamance that he wanted to go to trial.  Regardless, even if it was deficient in any regard, Ground III clearly fails because Petitioner has failed to demonstrate prejudice.

> To show prejudice, [Petitioner] must show that "but for the ineffective advice of counsel there is a reasonable probability" that: (1) he "would have accepted the plea"; (2) "the prosecution would not have withdrawn it in light of intervening circumstances"; (3) "the court would have accepted its terms"; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

*United States v. Smith*, 983 F.3d 1213, 1221 (11th Cir. 2020) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

Here, Petitioner's prejudice argument fails because he has not established a reasonable probability that he would have accepted the plea but for the alleged ineffective advice of counsel. In essence, Petitioner offers nothing more than his "'own conclusory after-the-fact assertion' that he would have accepted [the] plea, [which], without more, is insufficient to satisfy the first prong of the prejudice test."  *Smith*, 983 F.3d at 1222 (citing *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015)).  Therefore, the state court's finding that Petitioner was not credible in asserting that he would have taken the plea, where Petitioner remained steadfast about proceeding to trial and denying his guilt, was a reasonable application of *Strickland* and *Lafler*.  *See Osley v. United States*, 751 F.3d 1214, 1224-25 (11th Cir. 2014) (recognizing that a defendant's contention (postconviction) that he would have accepted a plea deal may be undermined by that defendant's continued denial of guilt or claims of innocence).

## C.  GROUND IV (Alleged Consideration of Lack of Remorse at Sentencing)

The Petition should be denied as to Ground IV.  During the sentencing hearing, Petitioner read into the record a letter that he prepared.  ST. 18-21.  Petitioner stated, *inter alia*, "I have been

a productive citizen of society even after this career-hindering situation occurred." ST. 20.  When

announcing Petitioner's sentence, the state trial court stated as follows:

> As to count one, and I'm gonna tell you my rational[e] for the sentence, it comes down [to] one statement that Mr. McNeill made in his statement to me.

> I would have never expected him to be admitting any kind of guilt or suggesting that giving up any issue that may in his mind or in his attorney's mind interfere with his appellate rights, so to that extent that doesn't bother me because as a prior defense attorney, I understand that.

> But Mr. McNeill said something that troubles me and that's that he views this event as one thing, and it was his words that troubled me and that he viewed this event as being career-hindering.

> I agree he's a very intelligent person. His victim is a very intelligent person. This event may have been career-hindering to him, but it was life-altering for her. And that lack of recognition troubles me because it doesn't indicate, not an acceptance of guilt but an understanding of the impact that someone in a position of trust can have over another individual.

ST. 29-30.

Petitioner's counsel did not raise any objection regarding the court's "career-hindering"

remark.  However, shortly after the Court announced the sentence, Petitioner addressed the court,

stating as follows:

> Your Honor, I just, um, in the understanding of the weight that you held on me speaking of career-hindering, I don't, I'm trying to understand that you're being that, that weighed. You're saying that I have no remorse towards anything, but there is, I was never, I never took the stand to actually make any statements, so it's like I never got to speak on my behalf before it happened as well. The reason why I wrote that--

ST. 33.  In response, the court stated:

> Well, Mr. McNeill, you did have the opportunity to speak. I colloquied you on that at the time of [] trial, and I understand that your trial lawyer's strategy in encouraging you not to speak, but the colloquy was very clear that was your decision to make. So I want the record to be very clear that there's no suggestion here that you were never given an opportunity to defend yourself and tell your side of the story, but after consultation with your lawyer for reasons which he's already explained, you're ultimate decision standing alone was to make that decision.

20

> So that being said, listen, you had a chance to speak. It's easy now to play Monday-morning quarterback and look back at the Court's rational[e]. I heard what you said. I interpreted it the way I did. I respect the jury's verdict in finding you guilty, and I sentenced you accordingly, so.

ST. 33-34.

When a state trial court sitting within the district of Florida's Fourth District Court of Appeal (like the state trial court in this case) sentences a criminal defendant who was convicted at trial, the court is generally prohibited from considering a lack of remorse in determining the defendant's sentence. *Sibrun v. State*, 308 So. 3d 996, 996-97 (Fla. 4th DCA 2020). There are certain exceptions, including when a defendant seeks a downward departure. *See Rankin v. State*, 174 So. 3d 1092, 1096-98 (Fla. 4th DCA 2015). But no exception was present here. Instead, Petitioner simply requested a sentence at the bottom of the guidelines. Thus, the state trial court would have erred *if* it considered lack of remorse in sentencing Petitioner. Moreover, to the extent such an error occurred, it would be fundamental error. *See Charles v. State*, 204 So. 3d 63, 66 (Fla. 4th DCA 2016) ("[W]hen a trial court relies on impermissible factors in sentencing a defendant, the court violates the defendant's due process rights." (citation omitted)).

However, Petitioner has not shown that any such error occurred and, therefore, has not demonstrated an unreasonable application of *Strickland*. While the state appellate court did not explain its rationale for denying Petitioner's state-court habeas petition, the state appellate court presumptively adjudicated Petitioner's claim – on the merits – that the trial court impermissibly considered lack of remorse at sentencing. *See Harrington*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Under the circumstances, I cannot conclude that the state

appellate court's denial of Petitioner's state-court petition constitutes an unreasonable application of *Strickland*.

Significantly, it is not clear from the state trial court's comments (reflected above) that it considered "lack of remorse" in sentencing Petitioner. First, it was Petitioner – not the court – who characterized the state trial court's comments as evidencing consideration of a lack of remorse. Second, the state trial court's comments do not reflect that it punished Petitioner for denying guilt and exercising his right to trial. In fact, the trial court made clear that it was not doing so. Third, while the trial court's comments regarding Petitioner's "career-hindering" statement indicate that the trial court considered Petitioner's failure to appreciate the seriousness of the offense he was convicted of, the trial court's comments do not clearly or specifically demonstrate any actual consideration of lack of remorse. Therefore, it was not unreasonable for the state appellate court to reject Petitioner's lack-of-remorse argument and thus conclude that Petitioner suffered no prejudice under *Strickland*.

I reiterate that error correction is for state appellate courts and that federal habeas review only "exists as a guard against *extreme malfunctions* in the state criminal justice systems." *Woods*, 575 U.S. at 316 (emphasis added) (citation and internal quotation marks omitted). Petitioner, however, has not demonstrated any such "extreme malfunction," and he certainly has not shown that the state appellate court's ruling regarding the lack-of-remorse issue "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation omitted). Therefore, the Petition should be denied as to Ground IV.

### D. GROUND V (Prosecutor's Comments Allegedly Regarding Petitioner's Silence)

Petitioner's appellate counsel was not ineffective for failing to argue on appeal that the prosecutor impermissibly commented on Petitioner's right to remain silent during closing argument. Petitioner's argument to the contrary is meritless because, quite simply, the prosecutor did not make any such comments.

> During closing argument, the prosecutor stated, in pertinent part, the following:
>
> Did the State prove this or attempted [sic] to prove this with only one witness? I'd like 10, 20, 15. I don't know, maybe even three would be nice, but this was not a brawl that occurred at a bar full of people. This was not something that happen[ed] on the 50-yard line of Superbowl with a million watching. The State of Florida did not get to pick the type of crime that was committed. He did.
>
> The State of Florida . . . did not get to pick the type of evidence that would be left behind. He did. The State of Florida . . . didn't get to decide how many eyewitnesses there would be. Mr. McNeill made that decision. He chose to commit this crime in a private setting were nobody else would see what was going on. There was no audience, and that was at his design. So I'm sorry that I only presented to you one witness to the crime, but that [is] how Mr. McNeill intended it.
> . . .
> So, yes, I understand that the judge will read you an instruction that says reasonable doubt can come from a lack of evidence, but I want you to ask yourself: Is it really a lack of evidence when it's the type of crime designed not to leave behind any evidence? It's not like a [sic] forgot to present it or the police lost it. What he chose to do to her in that massage room that day was designed not to be discovered. What you do have is direct testimony from the only other person in that room that day. You heard from [the victim] herself.
> . . .
> In evaluating any potential lack of evidence or lack of witnesses, you need to temper that with what your common sense tells you. Does your common sense tell you that there would be eyewitnesses to this crime other than [the victim]?

TT. 359-61.

Petitioner argues that the following statement made by the prosecutor (within the portion of the prosecutor's closing argument reflected above) implied that the jury should consider that Petitioner did not testify: "What you do have is direct testimony from the only other person in that room that day. You heard from [the victim] herself." In so arguing, Petitioner notes the liberal

rule in Florida that "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." *Rodriguez v. State*, 753 So. 2d 29, 37 (Fla. 2000) (citations omitted).  Respondent responds that "the prosecutor was not pointing to Petitioner's silence but was lamenting her own inability to present the jury with other State witnesses in addition to the victim."  Response at p. 27.

I agree with Respondent.  Petitioner cherry-picks one statement from the prosecutor's closing argument and attempts to rely on that statement in a misleading manner without providing any context.  But context is everything.  Viewed in context, the cherry-picked statement is not fairly susceptible of being interpreted as implicating Petitioner's failure to testify.  Petitioner's argument to the contrary is entirely devoid of merit.  Therefore, appellate counsel was not ineffective for failing to raise the issue on appeal, and no prejudice has been shown.

### E.  GROUND VI (Alleged Failure to Call Favorable Witness)

Ground VI fails on both performance and prejudice.  Petitioner argues that his trial counsel was ineffective for failing to call Susan Parker as a witness.  Ms. Parker was the owner of the Massage Envy location where Petitioner worked.  According to Petitioner, Ms. Parker arrived shortly after the victim left.  Petition at p. 42.  She was informed that the victim requested removal of her information from the system and, therefore, Ms. Parker questioned Petitioner regarding the massage session.  *Id.*  Petitioner asserts that Ms. Parker's testimony would have provided an alternative version of events (from the victim's), such that the jury would have heard that (1) "Petitioner alleged that the victim made sexual advances toward him, and he rejected her advances," and (2) "Petitioner wanted the authorities contacted, but that Ms. Parker advised against such action."  Petition at pp. 46-47.

At the state court evidentiary hearing on Petitioner's Rule 3.850 motion, counsel testified that he did not believe he spoke with Ms. Parker,[10] but he reviewed her deposition.  HT. 97.  Based on his review, he determined she would not be beneficial to the defense because her deposition testimony did not appear to

> match up with what [Petitioner] said in his motion that she actually approached him and asked what happened because [the victim] was upset which is not a good fact for [Petitioner], and that [Petitioner] basically said nothing happen[ed], that there was nothing about him wanting her to call the police. It wasn't in the depo. Plus on the other hand anything that he would have said to her would have been hearsay. I couldn't bring it in because it's not party opponent unless hearsay rule and there was no hearsay rule fit obviously. So if that's all, it would not have been admissible any way.

HT. 98.

In denying postconviction relief as to the issue Petitioner raised regarding Ms. Parker, the state trial court found as follows:

> The Court finds that Mr. Cannarozzi's decision not to call Susan Parker to testify was reasonable under the circumstances.
>
> Mr. Cannarozzi reasonably believed that Ms. Parker's testimony about what Defendant told her would have been inadmissible hearsay. Mr. Cannarozzi cannot be said to have been ineffective for failing to call to the stand a witness who had nothing to contribute to the defense.
>
> Even if the testimony was admissible, Defendant was not prejudiced by Mr. Cannarozzi's decision not to call Ms. Parker to testify. Ms. Parker's testimony that the victim was visibly upset after her massage would have corroborated the victim's testimony. Defendant contends that Ms. Parker would have testified that on the same day as the incident, he told her that the victim had made advances towards him. However, according to Ms. Parker's deposition testimony, she could not recall whether he told her about the victim's advances on the same day as the incident or after he was arrested.

R. 201-02.

---

[10] Other counsel had been representing Petitioner during earlier stages of Petitioner's case before trial counsel began representing Petitioner.

With respect to Petitioner's claim that the jury would have heard Ms. Parker testify that Petitioner stated, "the victim made sexual advances toward him, and he rejected her advances," Petitioner is incorrect.  Such testimony would have clearly been excluded as textbook hearsay. Petitioner's argument to the contrary is meritless.

As to Petitioner's claim that Ms. Parker would have testified that "Petitioner wanted the authorities contacted, but that Ms. Parker advised against such action," counsel testified that Ms. Parker's deposition did not reveal anything about Petitioner wanting Ms. Parker to call the police. Moreover, Petitioner's alleged request to call the police was not a request he claims to have made based upon his session with the victim.  Instead, he asserts he wanted the police called in relation to Ms. Parker's account of a young man, *believed* to be the victim's boyfriend, coming in sometime after the victim, acting strangely, and requesting a massage with Petitioner.  Petition at p. 43.  Thus, even aside from the fact that counsel's testimony (which the state court found to be credible) undermines Petitioner's contention regarding wanting to call the police, it is unclear how testimony regarding Petitioner wanting to call the police about some strange man, who was merely believed to be the victim's boyfriend, would have helped Petitioner.

Ultimately, the only potentially beneficial testimony Ms. Parker could have provided would have clearly been excluded as hearsay.  Moreover, there were clearly good reasons not to call Ms. Parker as a witness given that she would have testified the victim was visibly upset. Therefore, Petitioner has not established deficient performance or prejudice, and he has undoubtedly failed to establish that the state trial court unreasonably applied *Strickland*.

## V. <u>ALTERNATIVE REQUEST FOR EVIDENTIARY HEARING</u>

Petitioner requests an evidentiary hearing, in the alternative, but he only does so in his Reply [DE 9].  Nevertheless, even assuming a request for an evidentiary hearing may be raised for

the first time in a reply, Petitioner has failed to demonstrate that he is entitled to an evidentiary hearing.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Petitioner has the burden to establish the need for an evidentiary hearing. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[T]he district court need not conduct an evidentiary hearing if the record refutes the petitioner's factual allegations, otherwise prevents habeas relief, or conclusively demonstrates that the petitioner was not denied effective assistance of counsel." *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 926 (11th Cir. 2017) (citing *Schriro*, 550 U.S. at 474). A Petitioner's conclusory allegations fail to demonstrate that an evidentiary hearing is warranted. *Chavez*, 647 F.3d at 1061.

Furthermore, the deferential standards of habeas review under § 2254 apply in determining whether an evidentiary hearing is appropriate. *See Schriro*, 550 U.S. at 474 ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts."). Thus, "before a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

Here, Petitioner fails to carry his burden. Specifically, Petitioner fails to demonstrate the existence of any basis to warrant a federal evidentiary hearing. Rather, Petitioner's claims are all resolvable based upon the state court record without the need to develop the record further. The

transcript from the state court evidentiary hearing and the other materials in the record provide the information needed to resolve the claims regarding ineffective assistance of trial counsel, and the trial and sentencing transcripts (along with the other materials in the record) provide the information needed to resolve the claims regarding ineffective assistance of appellate counsel. Therefore, I find that an evidentiary hearing is unnecessary and decline to hold one.

## VI. <u>CERTIFICATE OF APPEALABILITY</u>

A habeas petitioner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal, and must obtain a certificate of appealability to do so, where "the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a district court has rejected a petitioner's claims on a procedural basis, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Upon consideration of the record, the Court should deny a certificate of appealability because reasonable jurists would not find the assessment of the claims debatable or wrong. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections to this Report.

## VII. <u>CONCLUSION</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Petition [DE 1].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 4th day of March 2021.

**Jared M. Strauss**
**United States Magistrate Judge**